IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division


JUDITH BURKHEAD,

                    Plaintiff,

v.                                                    Civil Action No. 3:12-cv-00832-JAG

WACHOVIA HOME MORTGAGE,
and WELLS FARGO BANK, N.A.,

                    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on the motion to dismiss filed by Wells Fargo Bank, N.A.

("Wells Fargo").[1]  In this case, the *pro se* plaintiff, Judith Burkhead, claims that the defendants

engaged in various misrepresentations and failed to make the disclosures mandated by the Real

Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA").  The

Court will dispense with oral argument because the facts and legal contentions are adequately

presented in the materials before the Court and oral argument would not aid in the decisional

process.  As explained below, the Court will grant the defendants' motion to dismiss because the

plaintiff fails to state a plausible claim under either RESPA or TILA, because applicable statutes

of limitation furthermore bar these claims, and, lastly, because the plaintiff fails to articulate how

any fraudulent concealment would entitle her to equitable tolling.

---

[1] Contrary to Burkhead's assertion, Wachovia Home Mortgage ("Wachovia") is not a subsidiary corporation of Wells Fargo.  Wells Fargo acquired Wachovia Corporation in 2008, and Wells Fargo is the "successor-by-merger" to Wachovia.  (Defs.' Mem. Supp. Mot. to Dismiss 1.) Wells Fargo has filed the motion to dismiss on behalf of both entities, but the Court takes judicial notice that Wachovia no longer exists as an independent entity and thus dismisses all claims against it.

## I.   Background

In April 2004, Burkhead refinanced her home loan through World Savings Bank, FSB ("World Savings Bank"). In 2007, World Savings Bank either changed its name to Wachovia Mortgage, FSB ("Wachovia"), or was taken over by the latter entity.[2] In 2008, Wachovia merged with Wells Fargo. At some point before late 2010, Burkhead defaulted on her loan payments to Wells Fargo.[3] She unsuccessfully litigated in state court from late 2010 through April 2012 in an effort to forestall the foreclosure of her home. The instant action, initiated in July 2012, is a continuation of Burkhead's attempts to demonstrate that Wells Fargo has engaged in unfair and deceptive lending practices and to keep possession of her home.

## II.   Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*,

---

[2] It is unclear whether Wachovia "acquired" World Savings Bank or whether World Savings Bank "changed its name" to Wachovia. (*Compare* Defs.' Mem. Supp. Mot. to Dismiss 3 n.3, *with id.* 7–8.) Whatever the nature of this transition may have been, Wachovia subsequently merged with Wells Fargo in 2008, bringing Wachovia to an end. (*See id.* 3 nn.3, 7.)

[3] The pleadings do not indicate specifically when the default occurred.

556 U.S. at 677-78; *Twombly*, 550 U.S. at 557).  Although the Court must accept as true all well-pleaded factual allegations, it need not accept a party's legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Wells Fargo seeks dismissal, in part, on the basis of the relevant statutes of limitation for RESPA and TILA.  In support of its defense, Wells Fargo has attached various documents to its motion to dismiss.  The Fourth Circuit has stated:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] *on the face of the complaint*."

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis added)).  In accordance with the foregoing principle, the Fourth Circuit has furthermore explained:

> Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citations omitted).  In short, courts do not generally assess the merits of affirmative defenses at the 12(b)(6) stage, but when a defendant presents exhibits that clearly demonstrate a defense's validity, the plaintiff herself has made those exhibits central to the dispute, and the exhibits are evidently authentic, courts may rely on those documents in granting a motion to dismiss.

3

### III.   Discussion

Burkhead brings four claims against the defendants.  The first and fourth counts request "declaratory relief" and "injunctive relief," respectively.   In Count One, she asks for a declaratory judgment that she did not default on her loan payments and should be permitted to continue making payments toward her home.   In Count Four, she asks for an injunction preventing the defendants from foreclosing.  She does not articulate a clear legal basis for these claims, instead referring to "calculation" errors, "origination and servicing violations," and the remainder of her complaint generally.

In Counts Two and Three, respectively, she claims that the defendants violated RESPA, 12 U.S.C. § 2601 *et seq.*, and TILA, 15 U.S.C. § 1601 *et seq.*  With one small exception, however, she does not argue that the defendants have violated any particular provisions of these laws.  Burkhead's various allegations from her complaint are as follows:

4. On April 26, 2004 Plaintiff was solicited by World Savings Bank for a refinance loan on their home mortgage.

5. Plaintiff submitted her monthly income and debt information to World Savings Bank (WSB) but the bank incorrectly and inaccurately reported the information on the Uniform Residential Loan Application.

6. WSB provided false and misleading information to Plaintiff about her interest rate and the rate of acceleration.

7. Plaintiff was not provided with required disclosures under 15 U.S.C. § 1601, et seq.

8. Plaintiff was not provided with required disclosures under 12 U.S.C. § 2601, et seq.

9. Plaintiff was not notified of the assignment of her loan in violation of 12 U.S.C. § 2605(a) despite the fact that interest in ownership and/or servicing has been assigned at least three times.

10. Plaintiff was advised that her loan was in default based upon defective calculations on the part of Defendants.

11. Defendants have refused to accept regular, proper payments from Plaintiff thus exacerbating the alleged default and increasing purported fees and penalties.

4

12. Defendants have refused to consider Plaintiff for loan modification, forbearance or alternative resolution to foreclosure.

. . .

14. Defendants' calculations are in error and fail to account for damages owed to Plaintiff based on origination and servicing violations.

15. These violations are available to Plaintiff by way of recoupment and offset and would cure any perceived default by Defendants.

. . .

17. Defendants failed to provide proper disclosure at closing.

18. Defendants failed to notify Plaintiff of her assignment of the ownership and servicing of the subject loan.

19. Plaintiff was not provided with disclosure of the relationships between the originators at closing.

. . .

21. Plaintiff was not provided with an itemization of amounts financed.

22. Plaintiff was not provided with the required number of Notices of the Right to Cancel.

23. Plaintiff's income and debt information was improperly calculated and intentionally misrepresented.

24. The interest rates disclosed to Plaintiff were different than what was represented on the documentation.

25. Plaintiff was asked to make payments that were different than that which was presented on the amortization schedule provided to them.

(*See generally* Compl.)

A.    RESPA Claims

Congress enacted RESPA to enable consumers to better understand the home purchase and settlement process and, where possible, to bring about a reduction in settlement costs. *Stith v. Thorne*, 488 F. Supp. 2d 534, 554 (E.D. Va. 2007) (citing 12 U.S.C. § 2601). At the same time, the statute provides relief only under specific circumstances:

RESPA creates a private right of action for only three types of wrongful acts: (1) failure of a loan servicer to provide proper notice about a transfer of servicing rights or to respond to a qualified written request for loan information, 12 U.S.C. § 2605; (2) payment of a kickback or unearned fees for real estate settlement services, 12 U.S.C. § 2607; and (3) requiring a buyer to use a title insurer chosen by the seller, 12 U.S.C. § 2608.

*Grant v. Shapiro & Burson, LLP*, ___ F. Supp. 2d ___ , 2012 WL 1632867, at *4 (D. Md. May 8, 2012). Only one of Burkhead's contentions even approaches a RESPA violation, namely, her claim that the defendants failed to notify her when they assigned the ownership and servicing rights to her loan, which would violate 12 U.S.C. § 2605(b)(1).[4] (Compl. ¶¶ 9, 18.) Her passing reference to § 2605(a) achieves nothing because she fails to allege that World Savings Bank did not disclose, "at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding."[5] 12 U.S.C. § 2605(a).

Likewise, under § 2605(b), she fails to state a claim because she does not make several necessary allegations, such as "whether [the] defendant was a loan servicer, when the alleged transfer took place, what entities were involved in the transfer, and what specific damages plaintiff suffered due to the lack of notice." *Id.* at *5 (citing *Teaupa v. U.S. Nat'l Bank, N.A.*, 836 F. Supp. 2d 1083, 1097–99 (D. Haw. 2011); *Delino v. Platinum Community Bank*, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009)); *see also Luther v. Wells Fargo Bank*, 2012 WL 4405318, at *7 (W.D. Va. Aug. 6, 2012). Burkhead baldly asserts that ownership and servicing rights to her loan changed hands at least three times, but she offers absolutely no details to support this contention. Perfunctory, threadbare allegations of a defendant's failure to provide notice do not

---

[4] "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1).
[5] An acknowledgment letter with Burkhead's signature suggests, in fact, that she likely did receive the necessary § 2605(a) notice. (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. A at 2.)

suffice to state a RESPA claim, and the Court must therefore dismiss Count Two. *See Grant*, ___ F. Supp. 2d ___ , 2012 WL 1632867, at *5; *Gutierrez v. PNC Mortg.*, 2012 WL 1033063, at *7 (S.D. Cal. Mar. 26, 2012); *Delino*, 628 F. Supp. 2d at 1232.

Moreover, even if she could somehow survive the Rule 12(b)(6) standard, the three-year statute of limitations applicable to claims under § 2605 would bar her claim. *See* 12 U.S.C. § 2614 (providing a three-year limit for claims brought under § 2605 and a one-year limit for claims brought under §§ 2607 and 2608). A limitations period begins to run "from the date of the occurrence of the violation," which, in this case, would be the date of the supposed failure to provide notice of assignment, sale, or transfer. *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002). Under § 2605(b)(2)(A), the servicer must normally provide such notice "not less than 15 days before the effective date of transfer of the servicing of the mortgage loan."[6] No loan "transfer" occurred when World Savings Bank converted to Wachovia in 2007 or when Wachovia merged with Wells Fargo in 2008.[7] But, even assuming for the sake of argument that a servicing transfer did occur during this time frame, the defendants' failure to provide the required notice would have given rise to a RESPA violation more than four years ago. Burkhead did not file this complaint until November 13, 2012. The statute of limitations, which has long since expired, thus bars her action.

---

[6] Under § 2605(b)(2)(B), the time period, in certain circumstances, extends to 30 days after the effective date of assignment, sale, or transfer, but the parties do not contend that those circumstances are present in this matter. At any rate, it would extend the limitations period, at most, by 45 days, so Burkhead's claim would remain untimely, even in one of the situations captured by this sub-section.

[7] "The following transfers are not considered an assignment, sale, or transfer of mortgage loan servicing for purposes of this requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due: (A) Transfers between affiliates; (B) *Transfers resulting from mergers or acquisitions of servicers or subservicers*; and (C) Transfers between master servicers, where the subservicer remains the same." 24 CFR § 3500.21(d) (emphasis added).

Still, Burkhead maintains that she should benefit from equitable tolling on the basis of the defendant's fraudulent concealment. Courts have not definitively settled whether equitable tolling applies to claims brought under RESPA. *See Cordon v. Aurora Loan Services*, 2010 WL 3418214, at *4-5 (E.D. Va. Aug. 26, 2010) (citing cases coming to opposite conclusions). But even if it does apply, Burkhead does not qualify because her allegation of fraudulent concealment is just as conclusory as her underlying allegation that the defendants failed to notify her of a loan assignment, sale, or transfer.

Equitable tolling requires a plaintiff to show that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). Burkhead may not have to *prove* the elements of fraudulent concealment at this stage of litigation, but she does not even *address* them. Her entire discussion of fraudulent concealment is as follows:

> Plaintiff has pled that Defendant failed to notify Plaintiff of the assignment of the ownership and/or interest in the servicing rights of her loan (Complaint, ¶ 18), that Plaintiff was not provided with the required disclosure regarding the relationship between the originators of her loan (Complaint, ¶ 19), and that Plaintiff was asked to make payments during the servicing of her loan that were different than those to which she had agreed at closing (Complaint, ¶ 25).

> Defendant's failure to advise Plaintiff of the assignment of the servicing and/or ownership of her loan is a clear violation of 12 U.S.C. § 2605(a).

> Defendant has never denied this omission. Defendant's misrepresentations of the payments due on the account and the requirements that Plaintiff pay amounts that differed from her original loan documents constitute multiple violations of 12 U.S.C. § 2601, et seq. Defendant's efforts to accelerate Plaintiff's loan based on a fraudulent calculation of default is a more than sufficient predicate for the application of equitable tolling.

8

(Pl.'s Mem. Opp. Defs.' Mot. to Dismiss 5–6.)  In other words, Burkhead's basis for equitable tolling amounts to nothing more than a bare restatement of her RESPA claims.  And given the deficiencies in these claims, she offers no reason to believe that she could establish eligibility for equitable tolling, even if allowed to proceed past the stage of initial pleadings.  In sum, because Burkhead fails to state a claim under RESPA, and because her claim, even if properly stated, would be barred by the three-year statute of limitations, the Court dismisses Count Two of her complaint.

### B.    TILA Claims

TILA "regulates the relationship between lenders and borrowers to facilitate the 'informed use of credit' by 'assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him.'" *Luther*, 2012 WL 4405318, at \*4 (citing 15 U.S.C. § 1601 *et seq.*).  "The Act requires creditors 'to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.'"  *Id.* (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)).  Stated differently, the "'material disclosures' required by TILA are the percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule.'"  *Id.* at \*5 (citing 12 C.F.R. § 226.23 n.48).  Lenders must provide these disclosures "at the time the loan is consummated."  *Id.* at \*4.

The defendants have provided a letter with the heading "WORLD SAVINGS | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z," in which World Savings Bank, the lender, made *all* of the aforementioned material disclosures, and which Burkhead signed in acknowledgement of receipt on April 26, 2004. (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. B at 2; Ex. C at 2.)  This document clearly states the annual

9

percentage rate (5.456%), the finance charge ($181,234.95), the amount financed ($158,745.01), the full schedule of payments (starting in June 2004 and ending in May 2034), and the total number of payments (a total of 360). (*Id.*, Ex. B at 2.)

It therefore comes as no surprise that Burkhead's factual recitations do not state a claim under TILA. As with her RESPA claims, she again fails to cite any specific provisions of the law, instead referring to the statute generally. Thus, she does not explain how any of her allegations actually relate to any concrete TILA requirements. She alleges that "WSB provided false and misleading information . . . about her interest rate and the rate of acceleration," "Defendants failed to provide proper disclosure at closing," "Plaintiff was not provided with an itemization of amounts financed," "Plaintiff was not provided with the required number of Notices of the Right to Cancel," and, lastly, that "[t]he interest rates disclosed to Plaintiff were different than what was represented on the documentation." (*See generally* Compl.) Burkhead does not say *how* her interest rate information or acceleration rate information were "false and misleading," nor does she say *how* her actual interest rate differed from what was originally disclosed to her. Her allegations represent the sort of "conclusory statements" that the Supreme Court requires lower courts to reject. *Iqbal*, 556 U.S. at 678.

More importantly, TILA does not create a statutory right to receive "an itemization of amounts financed" at the time of closing—only the right to receive notice that an itemization is available upon written request. TILA specifies that, "[i]n conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's *right to obtain, upon a written request*, a written itemization of the amount financed." 15 U.S.C. § 1638(a)(1)(B) (emphasis added). Burkhead does not argue that she failed to receive such notice. This allegation consequently does her no good.

10

Furthermore, Burkhead acknowledged receiving the required number of notices of the right to cancel at the time of her loan. A separate exhibit with the heading "WORLD SAVINGS | NOTICE OF RIGHT TO CANCEL – GENERAL" contains an "ACKNOWLEDGEMENT OF RECEIPT OF COPIES" along with the phrase "BY MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World)." (*See* Defs.' Mem. Supp. Mot. to Dismiss, Ex. D at 2.)(emphasis in original). Sure enough, Burkhead signed this document, also dated April 26, 2004.

Even if Burkhead could successfully state a claim under TILA, it would also be barred by the applicable statute of limitations. TILA places a one-year limit on damages actions, and this limit begins running on "the date of the occurrence of the violation."[8] 15 U.S.C. § 1640(e). In most cases, this date is the one on which "the borrower accepts a creditor's extension of credit," *i.e.*, the date of refinancing. *Grant*, ___ F. Supp. 2d ___, 2012 WL 1632867, at *6. Burkhead did not file her complaint until more than eight years after entering into the mortgage agreement with World Savings Bank. Accordingly, her TILA claims are time-barred.

Burkhead again contends that she should benefit from equitable tolling, but she must satisfy the same three-part test identified above in order to overcome the statute of limitations bar. *See Barnes*, 243 F. Supp. 2d at 563. She cannot do so for the reasons previously given. *See* Part III.A, *supra*. Quite simply, she has failed to articulate, let alone made plausible, any sort of fraudulent concealment on the part of the defendants. In light of the foregoing discussion, the Court dismisses Count Three of Burkhead's complaint.

---

[8] Though Burkhead does ask for "other such legal and equitable relief as this Court deems proper" in addition to "actual and statutory damages," she does not ask for rescission, which is also an option under TILA. In fact, rather than asking to rescind the loan, Burkhead seems determined to maintain control of her home at all costs. Accordingly, the three-year time limit on the right to rescission under 15 U.S.C. § 1635(f) is not relevant to this dispute.

11

Case 3:12-cv-00832-JAG   Document 24   Filed 05/17/13   Page 12 of 12 PageID# 163

C.    Remaining Claims

Because Burkhead does not offer a sufficient legal basis for her claims seeking declaratory and injunctive relief, and because her other claims predicated on RESPA and TILA merit dismissal, the Court also dismisses Counts One and Four from her complaint.

## IV.    Conclusion

For the foregoing reasons, the Court grants the defendants' motion to dismiss in entirety.

An appropriate order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and to the plaintiff via U.S. Mail.

Date: May 17, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge